JOHN T. LINDSEY, JR.,        )
        )
        Plaintiff,        )
        )        Case No. 04 C 5765
        v.        )
        )
JOHN GRACE BRANCH, NO. 825, JAY RICKE, )
President, UNITED STATES POSTAL SERVICE,       )
RICK STRYKER, Postmaster,        )
        )
        Defendants.        )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Pro se Plaintiff John T. Lindsey, Jr. brings this action against Defendants the John Grace Branch No. 825 of the National Association of Letter Carriers, AFL-CIO (the "Union"), the Union's President, Jay Ricke, (collectively, the "Union Defendants"), Lindsey's former employer, the United States Postal Service ("USPS"), and Postmaster Rick Stryker. Construing his pro se Complaint liberally, *see Perruquet v. Briley,* 390 F.3d 505, 512 (7th Cir. 2004), Lindsey alleges that the Union breached its duty of fair representation and that the USPS breached the Collective Bargaining Agreement. Before the Court is the Union Defendants' and the USPS' Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' motions.

## BACKGROUND

### I.    Northern District of Illinois Local Rules

Because Lindsey is a pro se litigant, the Union Defendants and the USPS both served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by

Northern District of Illinois, Local Rule 56.2. These notices explained the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

When determining summary judgment motions, the Court derives the background facts from the litigants' Local Rule 56.1 statements. The Local Rules provide parties with specific details as to how litigants in the Northern District of Illinois should approach summary judgment motions and responses. Local Rule 56.1(a)(3), for example, requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3) requires the non-moving party, in this case Lindsey, to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. In addition, the parties' Rule 56.1 statements must contain references to affidavits, parts of the record, and other supporting materials. *Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000); *see also Bradley v. Work,* 154 F.3d 704, 708 (7th Cir. 1998) (courts need to know basis of evidentiary information to determine whether evidence properly admissible).

In response to Defendants' Motions for Summary Judgment, Lindsey filed a "Motion of Material Facts to Deny Defendants' Counsel Request for Summary Judgment," which the Court construes as a response to Defendants' motions. (R. 49-1, 50-1.) Lindsey also filed two additional responses to the USPS' and Union Defendants' motions. (R. 55-1, 56-1.) As Defendants correctly assert, Lindsey's filings do not comply with the Local Rules. Although the Court construes pro se pleadings liberally, Lindsey's pro se status does not absolve him from complying with the Local Rules concerning his statement of facts. *Greer v. Board of Ed. of City*

*of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (pro se litigants must follow clear procedural rules). Accordingly, the Court deems as admitted Defendants' Local Rule 56.1 statements of fact that are supported by the record because Lindsey has failed to properly contest them. *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

## II. Facts

### A. Parties

On March 3, 2001, Lindsey started his career appointment as a part-time flexible ("PTF') city letter carrier at the Bellwood, Illinois, Post Office. (R. 47-1, USPS' Rule 56.1 Stmt. Facts ¶ 1; R. 47-1, Union Defs' Rule 56.1 Stmt. Facts ¶ 2.) The Union serves as the exclusive bargaining representative for all city letter carriers employed by the USPS, including Lindsey. (USPS Stmt. ¶ 2; Union Defs' Stmt. ¶ 1.) The Union and the USPS prepared a Joint Contract Administration Manual ("JCAM") that contains a narrative explanation of the Collective Bargaining Agreement's ("CBA") provisions. (USPS Stmt. ¶ 3.) The JCAM sets forth the rights, benefits, and responsibilities under the CBA. (*Id.,* Ex. 25.) The JCAM explains that the USPS management has the exclusive right, subject to the terms of the CBA, to direct city letter carriers in the performance of their duties. (*Id.* ¶ 4.)

### B. USPS Employee Work Hours

Pursuant to Article 7 of the CBA, the Postal Service's regular work force is comprised of full-time employees who are assigned to regular weekly schedules of 5 days consisting of 8 hours each day. (Union Defs' Stmt. ¶ 4.) On the other hand, PTF employees, like Lindsey, are career hourly rate employees who are available to work flexible hours assigned by the USPS

during the course of a work week.  (USPS Stmt. ¶¶ 5, 6.)  PTF letter carriers have flexible work

hours rather than a fixed schedule and have no hourly guarantees.  (*Id.* ¶¶ 7, 8.)  In addition, the

CBA does not prohibit the USPS from assigning overtime work to PTF carriers.  (Union Defs'

Stmt. ¶¶ 6, 7.)  In fact, throughout his tenure as a PTF carrier, the USPS routinely scheduled

Lindsey to more than 40 hours in a work week.  (*Id.* ¶ 11.)

### C.     Warning Letter – January 12, 2004

On January 9, 2004, the Acting Supervisor of Customer Services at the Bellwood Post

Office, Karl Williams, notified Lindsey that he was scheduled to work on January 10, 2004.

(USPS Stmt. ¶ 17.)  Lindsey responded that he was scheduled to be off on January 10th, and

consequently, he did not report for work that day.  (*Id.* ¶¶ 18, 19.)  On January 12, 2004, the

USPS issued Lindsey a warning letter for not reporting to work on January 10, 2004.  (*Id.* ¶ 21;

Union Defs' Stmt. ¶ 13.)  On January 23, 2004, the Union filed a grievance on Lindsey's behalf

protesting the January 12, 2004 warning letter.  (USPS Stmt. ¶ 22.)  On February 9, 2004, the

Union and the USPS reached a settlement agreement concerning the warning letter, placing

Lindsey on notice that "as a PTF, he is required to work all days, all hours, at the discretion of

management," and that his "[f]ailure to report for duty and to follow the instructions of his

supervisor could result in more severe discipline."  (*Id.* ¶ 25; Union Defs' Stmt. ¶ 14.)

### D.     Notice of Suspension of 14 Days or Less – January 22, 2004

On January 2, 2004, Lindsey submitted a written request to be excused from work for

leave without pay ("LWOP") from January 17, 2004 through January 26, 2004.  (USPS Stmt. ¶

36.)  The USPS denied Lindsey's LWOP request.  (*Id.* ¶ 37.)  USPS management thus scheduled

Lindsey to work on January 20, 2004.  (*Id.* ¶ 38.)  On January 20, 2004, Lindsey called the

4

Bellwood Post Office and reported that he was going to be absent that day. (*Id.* ¶ 39.) When the USPS management asked Lindsey to provide medical documentation for his January 20th absence, Lindsey stated: "No, I already have the medication to take care of the problem I have, it's my back." (*Id.* ¶ 40.) Lindsey returned to work the next day, but did not provide any documentation supporting his January 20th absence. (*Id.* ¶ 41.)

Thereafter, Williams issued Lindsey a Notice of Suspension of 14 Days or Less for the charge of "absent without official leave" because Lindsey failed to provide documentation to support his absence. (*Id.* ¶¶ 42, 43; Union Defs' Stmt. ¶ 17.) The Union filed a grievance on Lindsey's behalf protesting the notice. (USPS Stmt. ¶ 44.) On March 9, 2004, the Union and the USPS executed a settlement agreement providing "that the suspensions dated January 17th and January 22nd are combined into one seven day suspension which will be rescinded one year from the date of issuance if there is no recurrence of cited infractions during this period." (*Id.* ¶ 46; Union Defs' Stmt. ¶ 18.) Lindsey did not agree with the settlement agreement, and thus refused to sign it. (USPS Stmt. ¶ 48.)

### E. Notice of Suspension of 14 Days – March 31, 2004

On March 31, 2004, Dominic Triveri, the Supervisor of Customer Services at the Bellwood Post Office, issued Lindsey a Notice of Suspension of 14 Days for his excessive absenteeism. (*Id.* ¶ 49; Union Defs' Stmt. ¶ 19.) The Union filed a grievance on Lindsey's behalf protesting this notice. (USPS Stmt. ¶ 51.) On May 10, 2004, the USPS and the Union executed a settlement agreement resolving the grievance by providing that the 14 day suspension "will be rescinded one year from the date of issuance if there is demonstrable improvement in [Lindsey's] attendance during this period." (*Id.* ¶¶ 52, 53; Union Defs' Stmt. ¶ 21.)

## F.    Notice of Removal – April 21, 2004

On April 16, 2004, Triveri instructed Lindsey to check his work schedule because it had been changed to reflect that Lindsey was working on April 17, 2004.  (USPS Stmt. ¶ 55.) Nevertheless, Lindsey did not report to work on April 17, 2004.  (*Id.* ¶¶ 56, 57; Union Defs' Stmt. ¶ 23.)  Lindsey explained that he did not report to work on April 17, 2004 because he had already worked five days that week.  (USPS Stmt. ¶ 60.)  On April 21, 2004, Triveri issued Lindsey a disciplinary Notice of Removal because Lindsey failed to follow instructions and report for duty on April 17, 2004.  (*Id.* ¶¶ 63, 64.)  The Union filed a grievance on behalf of Lindsey protesting the notice of removal.  (*Id.* ¶ 65.)  On June 2, 2004, the Union and the USPS executed a settlement agreement whereby the parties agreed to resolve the grievance by allowing Lindsey to return to work under a Last Chance Agreement.  (*Id.* ¶ 66, Union Defs' Stmt. ¶¶ 26, 27.)  The Last Chance Agreement provided that Lindsey would return to duty on a last chance basis and that his continued employment would depend on his ability to conform to all the USPS regulations, especially following his managers' instructions to report to work.  (USPS Stmt. ¶ 68.)  Lindsey was not happy with the settlement and considered it an agreement between the Union and the USPS.  (*Id.* ¶ 70; Union Defs' Stmt. ¶ 28.)

## G.    Notice of Removal – August 23, 2004

In July and August of 2004, Lindsey failed to report to work as scheduled on nine separate occasions.  (USPS Stmt. ¶ 72; Union Defs' Stmt. ¶ 30.)  On August 23, 2004, Triveri issued a Notice of Removal for the charge of "failure to abide by a last chance agreement." (USPS Stmt. ¶ 71.)  The Union filed a grievance on behalf of Lindsey to protest the August 2004 Notice of Removal.  (*Id.* ¶ 73.)  On October 4, 2004, the USPS and Union executed a settlement

agreement whereby the grievance was "withdrawn from the grievance/arbitration procedure by mutual agreement." (*Id*. ¶ 74.)  The USPS then terminated Lindsey's employment effective October 8, 2004.  (*Id*. ¶ 75.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  In determining whether a genuine issue of material fact exists, the Court construes all facts and reasonable inferences in a light most favorable to the non-moving party.  *Id.* at 255.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The existence of a factual dispute is not sufficient to defeat summary judgment; instead, the party who bears the burden of proof on an issue must affirmatively establish, through specific factual allegations, that there is a genuine issue of material fact for trial.  *East-Miller v. Lake County Highway Dept.*, 421 F.3d 558, 561-62 (7th Cir. 2005).

## ANALYSIS

Although Lindsey alleges breach of contract, conspiracy, and fraud, he has not established that the Court has diversity jurisdiction to hear his claims, *see* 28 U.S.C. § 1332, nor has he made any allegations supporting these claims.  In his Complaint, Lindsey also states that

he asked the Union Defendants about his rights under the "FLSA Act," that is, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Again, Lindsey does not provide any basis for a FLSA claim nor does he make any arguments supporting this claim. Instead, Lindsey contends that the Union failed to protect his rights throughout his tenure focusing on the Union's actions of June 2004 and his Last Chance Agreement. Looking at the substance of his Complaint, the Court has subject matter jurisdiction under the Postal Reorganization Act, 39 U.S.C. § 101*, et seq.,* because Lindsey is asserting a fair representation claim against the Union. *See United States v. Antonelli,* 371 F.3d 360, 361 (7th Cir. 2004) (in determining character of pro se filings, courts look to substance of filings rather than labels). Section 1208(b) of the Act, states: "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

Section 1208(b) is analogous to Section 301 of the Labor Management Relations Act, and thus courts consider Section 301 cases when determining claims brought under the Postal Reorganization Act. *See, e.g., Melendy v. USPS,* 589 F.2d 256, 259-60 (7th Cir. 1978); *see also Podobnik v. USPS*, 409 F.3d 584, 593 (3d Cir. 2005). Under Section 301 of the LMRA, an employee may bring a lawsuit against his employer for breach of a collective bargaining agreement, but he must first exhaust his remedies provided in the collective bargaining agreement. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 163-64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). If an employee can show that the grievance process has been subverted, however, he may bring a lawsuit under Section 301, notwithstanding the outcome of the

grievance or arbitration proceedings. *Id.* at 164. To prevail against an employer under Section 301, an employee must also establish that the union breached its duty of fair representation. *Filippo v. N. Ind. Pub. Serv. Co. Inc.,* 141 F.3d 744, 748 (7th Cir. 1998); *see also Neal v. Newspaper Holdings, Inc.,* 349 F.3d 363, 368 (7th Cir. 2003) (claims against union and employer interlocking, thus neither claim viable if other fails). "A union breaches its duty to fairly represent its members where its conduct toward one of its members is 'arbitrary, discriminatory, or in bad faith.'" *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1243 (7th Cir. 1997) (quoting *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). Thus, there are three separate inquiries: (1) did the Union act in bad faith (2) did the Union act in a discriminatory fashion; or (3) did the Union act arbitrarily? *See Neal,* 349 F.3d at 369.

Under this test, the first two inquiries are subjective and require evidence that the Union acted or failed to act based on an improper motive. *Id.* Here, Lindsey alleges that the Last Chance Agreement between the Union and the USPS resulted from a conspiracy against him. He further alleges that this agreement was one of "deceit, deception, omission and concealment." In support of his arguments, Lindsey contends that the USPS paid for the Union President's salary, a fact that is not supported by the record. Indeed, viewing the facts and inferences in light most favorable to Lindsey, the record does not support his argument that the Union had an improper motive while representing him. *See Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004) (non-moving party must set forth definite, competent evidence to rebut summary judgment). Therefore, the Court turns to whether the Union's actions were arbitrary.

"A union's actions are arbitrary only if the union's behavior is so far outside a wide range

of reasonableness as to be irrational." *Filippo,* 141 F.3d at 749 (internal quotations and citations omitted). Under this standard, the Court's review of the Union's actions is extremely deferential, that is, the Court cannot substitute its judgment for that of the Union. *Neal,* 349 F.3d at 369. "This wide degree of deference is warranted because Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative." *Ooley v. Schwitzer Div., Household Mfg., Inc.,* 961 F.2d 1293, 1302 (7th Cir. 1992). Finally, "only an egregious disregard for the union members' rights constitutes a breach of the union's duty." *Neal,* 349 F.3d at 369 (citations and quotations omitted).

Here, Lindsey does not challenge the October 4, 2004 settlement agreement where the Union withdrew the final grievance from the grievance/arbitration procedure that resulted in Lindsey's termination. Instead, Lindsey focuses on the Union's conduct concerning the June 2, 2004 settlement agreement where the parties allowed Lindsey to return to work under a Last Chance Agreement. He argues that this agreement prohibited him from saying "no" to overtime work and that he could not question his work schedule, whereas other postal carriers worked a normal work week. Lindsey fails to recognize, however, that it is undisputed that the USPS management had the exclusive right, subject to the terms of the CBA, to direct city letter carriers in the performance of their duties, including scheduling his work hours. Further, the CBA does not prohibit the USPS from assigning overtime work to PTF carriers like Lindsey. Accordingly, the settlement's terms cannot support the conclusion that the Union's actions constituted an egregious disregard of Lindsey's rights under the CBA. Lindsey simply has not established that the Union's actions were "so far outside a wide range of reasonableness to be irrational," and thus arbitrary.

Indeed, the record reveals that the Union represented Lindsey in a fair manner. For instance, the Union investigated Lindsey's various grievances and represented him successfully on many occasions despite Lindsey's repeated absences from work. *See Neal,* 349 F.3d at 369 (union required to conduct some investigation into employee's grievances); *Filippo,* 141 F.3d at 749 (settlement of grievance supports finding of fair representation). Based on these factors and Lindsey's failure to support his arguments with competent evidence, there are no genuine issues of material fact for trial concerning his fair representation claim. *See East-Miller*, 421 F.3d at 561-62.

Lindsey nonetheless argues that the USPS breached the CBA because the USPS scheduled him to work less hours than other employees on many occasions between April 6, 2004 and May 21, 2004. There is no evidence in the record, however, that Lindsey exhausted his remedies under the CBA as to this claim. *See DelCostello,* 462 U.S. at 163-64. Even if this claim against the USPS were viable, because Lindsey has not established that the Union breached its duty of fair representation, he cannot proceed against the USPS. *See Neal,* 349 F.3d at 368.

Finally, in his legal memoranda opposing summary judgment, Lindsey brings additional claims that he did not allege in his Complaint, including claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.;* and the Thirteenth Amendment to the United States Constitution, 42 U.S.C. § 1985.[1] The Court need not address these claims, however, because it is well-established that "a

---

[1] In his legal memoranda, Lindsey also argues that the Union's improper conduct encompassed the years 2001 through 2004. Because Lindsey filed the present Complaint in September 2004, the Court need not consider his claims based on the Union's alleged

plaintiff may not amend his complaint through arguments in his brief in opposition to a motion

for summary judgment." *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002) (quoting

*Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir. 1996)).

## **CONCLUSION**

For these reasons, the Court grants Defendants' Motions for Summary Judgment.

Dated:  October 19, 2005

**ENTERED**

_____

**AMY J. ST. EVE**
**United States District Court Judge**

---

misconduct in 2001-03 based on the six month statute of limitations for fair representation –
breach of collective bargaining agreement claims.  *See DelCostello v. Teamsters,* 462 U.S. 151,
169-70, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir.
1988).